THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JON P. MAYO, Defendant-Appellant.

Second District   Nos. 2—88—1159, 2—88—1204 cons.

Opinion filed September 21, 1990.

G. Joseph Weller and Beth Katz, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Steven R. Frank, of Johnson, Frank, Frederick & Walsh, of Urbana (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Jon P. Mayo, appeals his conviction of driving under

the influence of alcohol (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)). He contends the trial court erred in giving a jury instruction based on section 11—501.5 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.5, formerly Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.4) when there was no evidence adduced at trial to support the instruction.

At the trial, Officer Martin Shields of the Downers Grove police force testified that he saw defendant stopped at a stoplight on February 12, 1988. Officer Shields approached him because defendant's car windows appeared to be obstructed with snow and ice. When Officer Shields talked to him, Shields smelled alcohol on defendant's breath, saw that his eyes were bloodshot and his speech was slurred. Shields then ordered him to perform field sobriety tests, and defendant failed the walk-and-turn test, the heel-to-toe test, the finger-to-nose test and the one-legged-stand test.

At that time, Commander Jack Robertson arrived with a portable breath-screening device. Defendant agreed to Shield's request to take a preliminary test by blowing into the machine. Shields attempted to testify that the machine indicated that defendant's blood-alcohol concentration would have been at least 0.10% on a breathalyzer machine, but the officer's answer was stricken on the defendant's objection that no foundation was laid for that answer. Shields further testified that he formulated an opinion that defendant was intoxicated based on defendant's driving, the ice on the windows, the speech being slurred, his bloodshot eyes, the odor of alcohol on his breath and his performance on the field sobriety tests. Shields further testified that defendant refused to take the breathalyzer test when warned that if he registered a 0.10% or more blood-alcohol count, his driver's license would be suspended for three months. Officer Shields was extensively cross-examined regarding defendant's performance, appearance, and behavior.

Commander Robertson testified, without objection, that defendant blew into the screening machine and a red light flashed indicating that defendant would have registered a 0.10% blood-alcohol count on a breathalyzer, which meant defendant was intoxicated. On cross-examination, Robertson admitted that there was no State agency which certified operators of the machine; that he did not know the name of the machine, its serial number, its manufacturer, or whether or when the machine was last certified; that as far as he knew, the machine was certified by the manufacturer because the deputy chief had advised him so; that he did not have a log book showing when it was last certified as operating correctly; and that he did not test the ma-

chine himself. On redirect examination, Robertson again testified that the machine indicated defendant's blood-alcohol concentration was over 0.10%.

Officer Shields was recalled as a witness and testified that he told defendant the machine indicated that he had registered a 0.10% reading on a breathalyzer test. On cross-examination, he admitted he had no training on the use of the machine other than to tell suspects to blow into it and he had no knowledge whether the machine was accurate that night.

Defendant testified on his own behalf and stated he had worked from 5 a.m. to 5 p.m. that day and was tired at the time he performed the sobriety tests after 11:45 p.m. He admitted he drank three cans of beer at a friend's house that evening and then drove approximately six miles before he was arrested. He stated that he was able to perform the heel-to-toe test, straight-line test and the finger-to-nose test.

Following the close of evidence, the State tendered jury instructions. The assistant State's Attorney tendered People's instruction No. 11, which read as follows:

> "If a law enforcement officer has probable cause to believe that the person is violating Section 11—501, the officer, prior to arrest, may request the person to provide a sample of his breath for a preliminary breath screening test using a portable device [as approved by the Illinois Department of Public Health]. Those results may be used by the law enforcement officer for the purpose of assisting with the determination of whether to require a chemical test as authorized under 11—501.1 and 11—501.2."

The court asked him if the instruction was word for word from section 11—501.5. Although the assistant State's Attorney said it was, defense counsel noted the words "approved by the Illinois Department of Public Health" were missing following the words "portable device." The assistant State's Attorney then stated he would include the missing words. At that time, defense counsel objected because there was no evidence to support the phrase "approved by the Illinois Department of Public Health." The court allowed the instruction to be given over the objection and told defense counsel that he could argue that the evidence showed the device was not approved. Following its instructions and its deliberations, the jury returned a verdict of guilty on the DUI charge.

■■ The only issue raised on appeal is whether the court erred in giving People's instruction No. 11. We have no occasion to decide

the propriety of the submission of evidence of the breath-screening test testified to by Commander Robertson without objection. A trial court should refuse the tendered jury instruction when there is no evidence to support that proffered instruction. (*People v. Moya* (1988), 175 Ill. App. 3d 22, 25.) Thus, the court should not have given People's instruction No. 11 because there was not the slightest bit of evidence to show the device was approved by the Department of Public Health. The State refers to Commander Robertson's statement that the deputy chief advised him of the certification of the device, but this answer was in response to a question whether the manufacturer had certified the machine as operating correctly. There was no evidence that the Department of Public Health approved of the unnamed and unidentified machine. Neither party to this appeal has produced any regulations that the Department of Public Health uses to approve screening devices. In the absence of evidence to show the device was approved by the Department of Public Health, the trial court erred in giving the instruction.

The State argues that defendant cannot complain of an error in an instruction when he invited the error. This argument ignores the actual dialogue that occurred during the tendering of the instruction, as it was the court that asked whether the instruction corresponded to the statute. Moreover, defendant did not waive this objection by also noting that the instruction did not correspond to the law.

■ However, although the instruction was erroneously given, defendant's conviction will not be reversed unless the error actually prejudiced him. (*People v. Vanda* (1982), 111 Ill. App. 3d 551, 569.) The instruction itself was irrelevant to any issue before the jury. The issue was whether defendant was intoxicated, not whether the officer had a right to use the screening device result in his determination to require a breathalyzer test. As worded, the instruction actually limited the use of the damaging evidence of the test result from direct evidence of defendant's level of intoxication to evidence that the officers had cause to test him further. Thus, defendant cannot contend he was prejudiced by the instruction.

■ Finally, the defendant contends the instruction was argumentative because it singled out a single piece of damaging evidence and thus drew too much attention to it. (*People v. Hall* (1986), 143 Ill. App. 3d 766, 773.) In *People v. Godbout* (1976), 42 Ill. App. 3d 1001, 1009, the court found that numerous instructions dealing with a breathalyzer test unnecessarily emphasized that piece of evidence over other items of evidence in the record. Under the facts of that case, the court determined that the excessive number and types of instruc-

tions may have mistakenly suggested to the jury that the defendant was guilty of DUI solely on the basis of the breathalyzer results. By contrast, in the cause before the court, there was only a single instruction dealing with the machine, and that instruction actually deemphasized the probativeness of the test result. Thus, we do not believe the instruction unduly singled out one piece of evidence thereby requiring us to reverse defendant's conviction. *Vanda*, 111 Ill. App. 3d at 569.

For the above reasons, the judgment of the trial court of Du Page County is affirmed.

Affirmed.

REINHARD and WOODWARD, JJ., concur.