OPINION OF THE COURT
John M. Leventhal, J.
The defendant, Vyacheslav Kheyfets, is charged in a 15-count indictment with the crimes of criminal contempt in the first degree (3 counts), criminal contempt in the second degree *517 (2 counts), harassment in the second degree (2 counts), assault in the third degree (2 counts), menacing in the second degree, criminal mischief in the fourth degree (2 counts), assault in the second degree, and aggravated criminal contempt (2 counts). The defendant moves for an inspection of the Grand Jury minutes and for a dismissal of the indictment or a reduction of the charges on the ground of legal insufficiency of the evidence adduced before the Grand Jury. The defendant’s motion to inspect the Grand Jury minutes is granted. The motion to dismiss the indictment is granted with respect to 1 count of criminal contempt in the first degree, 1 count of criminal contempt in the second degree, and 2 counts of criminal mischief in the fourth degree but denied with respect to the other 11 counts.
The charges against the defendant arose out of two incidents. On January 14, 1997, the defendant, who had been drinking, allegedly started a fight with the complainant in their home between midnight and 1 o’clock. According to the complainant, the defendant called her names and attempted to get her to come to bed. When she refused, he hit and kicked her in the stomach and ripped off her blouse. The complainant yelled for help and the defendant turned up the volume of the television. The defendant then allegedly ripped the phone out of the socket, breaking it, because the complainant wanted to call the police. She continued to yell for help while the defendant kicked her arms and hit her breast, nose and lips, causing her nose to swell and her lips to bleed. Eventually the superintendent of the building and the police arrived. As a result of the incident, the complainant had black and blue marks, had difficulty eating and breathing, and took Tylenol for her pain. An order of protection was issued by the criminal court (Karopkin, J.) on January 14, 1997, to be in effect until February 19, 1997. A second order of protection was issued by the criminal court (Cross, J.) on April 9, 1997, to be in effect until April 8, 1998.
On April 18, 1997, the defendant, who had been drinking, allegedly began a fight with the complainant at their home. According to the complainant, the defendant wanted her to go to bed with him and when she refused he twisted her arm, ripped her watch off, breaking it, and began calling her names. The defendant pulled the phone out of the socket, breaking it, because the complainant wanted to call the police or his father. The defendant then picked up a knife, telling the complainant he would not hurt her. He yelled at her and then hit her in the stomach with his fist. The defendant waved the knife around *518 and cut the complainant’s forehead, causing it to swell and bleed. As the complainant tended to her injury, the defendant "tried to be nice.” The complainant then went shopping in order to get out of the house. The defendant later caught up with her in the lobby and started dragging her by the jacket while calling her names. The complainant screamed, causing neighbors to summon the police.
The defendant has moved to dismiss the indictment pursuant to CPL 210.20 (1) (b), claiming that the evidence before the Grand Jury was not legally sufficient to establish the offenses as charged.
The January 14, 1997 incident occurred between midnight and 1 o’clock and the order of protection was granted later that day. Therefore, the evidence was legally insufficient to sustain charges of criminal contempt in the first degree and criminal contempt in the second degree for violation of the January 14, 1997 order of protection. Accordingly, the defendant’s motion to dismiss counts 11 and 12 of the indictment is granted.
The motion to dismiss the 2 counts charging the defendant with criminal mischief in the fourth degree by twice breaking the telephone presents an interesting issue. The issue succinctly stated is whether one may be guilty of criminal mischief when the property damaged is jointly or co-owned by the defendant with the complainant. A person is guilty of criminal mischief in the fourth degree "when, having no right to do so nor any reasonable ground to believe that he has such a right, he” "[i]ntentionally damages property of another person”. (Penal Law § 145.00 [1].) Property is that of another person " 'if anyone, other than the defendant, has a possessory or proprietary interest in such tangible property’ ” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 145.00, at 60, citing Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 145 [1967]). Clearly one has no right to damage his or her spouse’s separate property. (People v Morton, 308 NY 96.) Destruction of marital or jointly owned property, however, presents a more complex issue.
In construing "property of another”, it is helpful to consider New York’s arson and larceny statutes. Larceny charges arise out of depriving an "owner” of his or her property. (Penal Law § 155.05 [1].) "Owner” is defined as "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder * * * A joint or common owner of prop *519 erty shall not be deemed to have a right of possession thereto superior to that of any other joint or common owner thereof’ (Penal Law § 155.00 [5] [emphasis added]). Thus, if property owned by two or more people is taken by one owner, he or she cannot be convicted of larceny. The principle behind this rule is that if one is an owner of property and entitled to possession at the time of the taking, there can be no larceny. "Consistent with this principle was the common-law view that a partner could not be convicted of larceny for the misappropriation of partnership assets; because each partner held title to an undivided interest in the partnership, the theory was that partners could not misappropriate what was already theirs.” (People v Zinke, 76 NY2d 8, 11.)
In contrast, it is an affirmative defense to the felony of arson in the fourth degree that no person other than the defendant had a possessory or proprietary interest in the damaged building or motor vehicle. (Penal Law § 150.05 [2].) It is also necessary, although not sufficient, to make out an affirmative defense to a charge of arson in the third degree that no person other than the defendant had a possessory or proprietary interest in the damaged building or motor vehicle, or if others had such an interest, all consented to the defendant’s conduct. (Penal Law § 150.10 [2].) Thus, it is clear that a person can be charged with arson for damaging another’s property interest despite the fact that he or she is a joint owner.
The criminal mischief statute is unlike the arson section in that it provides no affirmative defense for the destruction of property in which no one but the defendant has a proprietary or possessory interest. Moreover, it provides no definitional defense, like the larceny statute, for charges arising out of the destruction of marital or jointly owned property. Criminal mischief is unlike the crime of larceny in that it involves the damage to or destruction of property and "therefore, possession can never be redeemed.” (See, State v Webb, 64 Wash App 480, 490, 824 P2d 1257, 1263.) Thus, it may be reasonable to interpret "property of another” under the criminal mischief statute to include property which another, in addition to the defendant, owns. (See, State v Superior Ct., 188 Ariz 372, 936 P2d 558.) The law, however, has recently been decided that proof that the property which was damaged is owned by a person other than the defendant is an essential element of the crime of criminal mischief in the fourth degree. (People v Person, 239 AD2d 612, 613 [2d Dept 1997], citing People v Schmid, 124 AD2d 896, 897; People v Kittel, 36 AD2d 730.) As *520 the defendant has an equitable interest in the items he was charged with damaging, he could not be charged with criminal mischief in damaging or destroying the two telephones.* (People v Person, 239 AD2d, at 613, supra, citing Domestic Relations Law § 236 [c]; O’Brien v O’Brien, 66 NY2d 576, 583, 586.) The definition of owner under the larceny statute (CPL 155.00 [5]) has been judicially engrafted onto the criminal mischief article. This court is reluctantly bound to follow this interpretation (People v James, 111 AD2d 254, 256 [Titone, J. P., concurring opn]). Accordingly, counts 9 and 14 charging the defendant with criminal mischief in the fourth degree are also dismissed.
One commentator has, however, suggested that application of the criminal mischief statute to domestic violence situations in which one spouse damages marital property is supported by general property principles: "When a husband and wife own property together, they are often deemed to have a joint tenancy in the property. 'Joint tenancy is a tenancy of two or more persons whose interests are equal in every respect.’ Each concurrently owns all of the undivided whole and has a nonexclusive right to possess that undivided whole. Thus, when a husband destroys property that he owns jointly with his wife, not only does he destroy his property, which he may have a right to destroy, but he simultaneously destroys his wife’s undivided one hundred percent interest in the property, which he does not have a right to destroy. Therefore, when a husband destroys marital property, he destroys the property of another and violates this element of criminal mischief statutes.” (Lutz and Bonomolo, My Husband Just Trashed Our Home: What Do You Mean That’s Not A Crime?, 48 S Cal L Rev 641, 651 [1997].)
The Supreme Court invalidated a State statute that gave a husband, as "head and master” of property jointly owned with his wife, the unilateral right to dispose of such property without his wife’s consent. (Kirchberg v Feenstra, 450 US 455, 458.) Cases from appellate courts in other jurisdictions have held that one spouse does not have the right to destroy the property of the other just became he or she may also have an ownership interest in it. (See, State v Superior Ct., 188 Ariz, at —, 936 P2d, at 559, supra [property in which defendant holds a joint tenancy interest can be property of another person for *521 purposes of criminal damage statute where the statute contained no definition of " 'property of another person’ ”]; People v Kahanic, 196 Cal App 3d 461, 463, 241 Cal Rptr 722, 723 [community property status of an automobile did not preclude application of the vandalism statute, which refers to the property damaged as personal property "not his own”]; People v Schneider, 139 Ill App 3d 222, 224-225, 487 NE2d 379, 380 [while reversing on other grounds, the court concluded that the criminal damage to property statute "must be read to impose criminal responsibility on a person who damages another’s interest in property, regardless of whether ownership of the property in question is shared” and held that the defendant could be convicted for damaging a car in his wife’s possession that he may have co-owned]; State v Zeien, 505 NW2d 498 [Iowa] [the court found that "(t)he wording of the (criminal mischief) statute, as well as public policies of preventing domestic violence and damage to property generally, suggests that the statute should apply to marital property as well as any other”]; State v Webb, 64 Wash App 480, 824 P2d 1257 [defendant’s community property interest in the property that he damaged did not preclude prosecution for criminal mischief].) These sister States recognize that batterers often damage property to terrorize, threaten and exert control over victims of domestic violence. (See, Klein and OrlofF, Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law, 21 Hofstra L Rev 801, 872 [1993].)
New York’s criminal mischief statute differs from those applied in other States in that it has one additional element: that the person has no right nor any reasonable ground to believe that he has the right to damage another’s property. While the People have the burden of proving that a defendant’s belief was not reasonable, this is a question of fact for the jury to decide. (See, People v Reed, 121 AD2d 574 [landlord should have been permitted to testify about her belief that she was entitled to remove from premises property to which she held title].) A potential mistake of fact defense in this context should not be converted to an absolute defense resulting in dismissal of criminal mischief charges.
It was not long ago when crimes of domestic violence were viewed as a "private matter”. Heightened awareness of the problem in recent years has resulted in recognition of such crimes as a societal issue. The response has been a policy of mandatory arrest (see, CPL 140.10 [4]) and prosecution of domestic violence crimes, even in the absence of willing complain *522 ants (see, Hanna, No Right to Choose: Mandated Victim Participation in Domestic Violence Prosecutions, 109 Harv L Rev 1849 [1996]) or any "complainant” at all. (See, Wattendorf, "Prosecuting Cases Without Victim Cooperation”, FBI L Enforcement Bull, at 18-20 [Apr. 1996].) The State and Federal Legislatures as well as the executive branches have demonstrated their commitment in dealing with crimes of domestic violence by the enactment of recent legislation. (See, Family Protection and Domestic Violence Intervention Act of 1994, L 1994, chs 222, 224; Violence Against Women Act of 1994, 18 USC § 2261 et seq.) Thus, the public policy of preventing domestic violence would support a call to the Legislature to apply the criminal mischief statute to the damage and destruction of marital or jointly owned property. This would be in tune with the spirit of the recent Federal and State domestic violence legislation.
Accordingly, the defendant’s motion to dismiss the indictment is granted only as to counts 9,11,12, and 14 and is denied as to all other counts.

 The complainant’s interest in the telephone damaged in the second incident may be deemed superior to that of the defendant as the protective order was in effect on that date ordering defendant to stay away from the complainant and her home.